UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM J. GRILLIER,

       Plaintiff,

vs.

                                                Case No. 08-CV-12449
                                                HON. GEORGE CARAM STEEH

CSMG SPORTS, LTD. et al.,

       Defendants.

_____/

<u>ORDER DENYING DEFENDANTS' MOTION TO SEPARATE TRIAL ON ISSUE OF
ARBITRABILITY AND TO CONTINUE TO LIMIT DISCOVERY (#18)</u>

       Defendants CSMG Sports. Ltd., CSMG International, Ltd., CSMG, Inc. (collectively "CSMG"), and Henry Thomas move for a separate trial on the issue of whether any or all of plaintiff Kim Grillier's claims of breach of oral agreement, quantum meruit/unjust enrichment, and promissory estoppel are subject to arbitration, and for an order limiting discovery until after the court has conducted a trial on the issue of arbitrability. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

                                                   I.

       Plaintiff Kim Grillier alleges he began working for defendant Henry Thomas in 2001 as a sports agent, helping Thomas recruit young basketball players to sign agency contracts with Thomas Sports Management. Grillier alleges he was hired by Thomas as a "consultant" and was paid a nominal wage of $500.00 per month, but that "[f]rom the beginning, Thomas promised Grillier that Grillier would be rewarded with a percentage of

the fees generated by the players he [Grillier] successfully recruited." Complaint, ¶ 14, at 4. Grillier alleges that defendant CSMG Sports, Ltd. bought Thomas Sports Management in 2003, and Thomas became its Vice President of Basketball Operations. Grillier allegedly opened a CSMG office in Detroit, and continued to be paid $500.00 per month. Grillier alleges that "Thomas, on behalf of CSMG, promised Grillier he would receive a minimum of 20% of the fees for any current clients that Grillier had brought in, 15% of the fees for new clients, and 3% of the marketing fees for all clients." Id., ¶ 21, at 5-6. Grillier alleges he recruited numerous players to CSMG, including NBA players Dwayne Wade, Devin Harris, and Chris Bosh. Grillier alleges he was forced to leave CSMG when Thomas and CSMG failed to fulfill their promised financial obligations. Count I alleges breach of an oral agreement. Count II alleges quantum meruit/unjust enrichment. Count III alleges promissory estoppel.

CSMG filed a motion to dismiss and compel arbitration on June 16, 2008. In support of the motion, CSMG proffered a "Consulting Agreement" signed by Grillier and CSMG Sports, Ltd. on October 1, 2002, which reads in part:

> 3. **Compensation.**
>
> a. In exchange for performing the duties set forth herein, Company [CSMG Sports, Ltd.] shall pay Consultant [Grillier] $500.00 per month, payable on the last day of each month.
>
> b. <u>If an athlete referred by Consultant signs a representation agreement with Company, then Company, at its sole discretion, shall pay Consultant up to ten percent of the fees actually collected by Company</u> on the first two professional player contracts negotiated by Company for that athlete, regardless of the length of the professional player contract(s) signed by the athlete. With respect to the third or subsequent player contract negotiated by Company for that athlete, fees paid to Consultant, if any, will be at the sole discretion of the Company. Subject to the termination provisions set forth in Section 6 of this Agreement, any amounts that become due to Consultant shall be paid in the calender year following the year in which Company

2

actually receives the fees from the referred client(s) . . . .

4. **Independent Contractor**.

a.  The parties intend and agree that Consultant, in performing his duties hereunder, shall be and shall act at all times as an independent contractor. . . . .

c.  <u>Consultant is not, and shall not be considered, an agent or employee of Company.</u>  Consultant is not entitled to any employee benefits, including, but not limited to, health insurance, unemployment insurance, and pension plan. . . . .

10.  **Miscellaneous**.

\*          \*          \*

d.  Law to Govern.  The validity, construction and enforceability of this Agreement shall be governed in all respects by the laws of the State of Illinois without regard to its conflict of laws rules.  <u>With the exception of an action by Company to enforce the restrictive covenants contained herein, any controversy or claims arising out of, or relating to, this Agreement, or the breach thereof, shall be settled by arbitration held in Cook County, Illinois</u>**,** and administered by a commercial arbitration service agreed to by the parties under the selected services commercial arbitration rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  Any dispute that may not be settled by arbitration may be brought in any court of competent jurisdiction in Cook County, Illinois. Costs associated with binding arbitration shall be shared evenly by Consultant and Company.

(emphasis added).

Grillier responded to the motion arguing that the Consulting Agreement is inapplicable because Grillier became an employee of CSMG Sports, Ltd. on October 1, 2005, proffering a "New Hire Checklist," an October 4, 2005 employee enrollment letter, and an October 5, 2005 "Employee Confidentiality and Non-Solicitation Agreement." Grillier argued that he was employed under a new oral contract pursuant to Thomas' promises, a contract that did not provide for arbitration.  CSMG did not dispute that Grillier became an employee of CSMG Sports, Ltd. effective October 3, 2005, but instead argued

3

that the arbitration provision in the Consulting Agreement remained controlling in the absence of a written employment contract.  CSMG also proffered the affidavit of CMSG, Inc. Chief Financial Officer Ginger Gordon as proof that five players mentioned in Grillier's complaint signed representation agreements with CSMG Sports, Ltd. before Grillier became a CMSG employee on October 3, 2005, arguing in the alternative that the issue of compensation for these players – Marcus Taylor (signed June 12, 2002), Alan Anderson (signed May 4, 2005), Dwyane Wade (signed May 12, 2003), Devin Harris (signed May 31, 2004), and Chris Bosh (signed June 3, 2003) – was subject to the pre-employment arbitration clause set forth in the October 1, 2002 Consulting Agreement.

Following an August 13, 2008 hearing, the court denied, without prejudice, CMSG's motion to dismiss and compel arbitration, ordering that "[t]he parties may proceed immediately with limited discovery reasonably related to the issue of arbitration, prior to the Rule 16 conference."  August 15, 2008 Order.  The court scheduled a November 17, 2008 Rule 16 conference, with CMSG filing the instant motion for separate trials on November 14, 2008.  The court rescheduled the conference to November 24, 2008, at which the court was informed that no discovery related to the issue of arbitration had taken place.  A Rule 16 scheduling order was entered on November 24, 2008, which provides for a discovery cut-off of May 29, 2009 "(except pro athletes and coaches)."  Grillier was granted leave to file his response to CSMG's motion for separate trials by December 15, 2008, filing the brief on December 11, 2008.  CSMG filed a reply brief on December 18, 2008.  Grillier filed a supplemental response on January 6, 2009.

II.

Under 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA"), a federal district court

4

must "make a number of threshold determinations before compelling arbitration[.]" Fazio v. Lehman Brothers, Inc., 340 F.3d 386, 392 (6th Cir. 2003).

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Id. at 392 (quoting Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000)).

While couched in terms of a motion for separate trials under Federal Rule of Civil Procedure 42(b), and an order under Federal Rule of Civil Procedure 16(b)(3)(B)(ii) limiting the scope of discovery to issues related to the arbitrabililty of Grillier's claims, CSMG's motion, in effect, seeks to stay these proceedings as to Grillier's claims that are not subject to arbitration. The court has not yet made the initial determinations of whether the parties agreed to arbitrate, or the scope of any agreement to arbitrate. Fazio, 340 F.3d at 392. CSMG's motion skips the first two steps of the court's requisite analysis. In denying CSMG's June 16, 2008 motion to compel arbitration without prejudice, the court provided the parties with an opportunity to factually develop the first two threshold issues. Whether any or all of Grillier's claims are subject to arbitration, and whether this lawsuit should be stayed pending the results of arbitration, are issues of law for this court to decide. Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 576 (6th Cir. 2003) (citing Fazio, 340 F.3d at 395, for the proposition that "[d]istrict courts have the authority to decide whether an issue is within the scope of an arbitration agreement."). CSMG's instant motion for separate trials is procedurally unwarranted under the circumstances. CSMG may renew its motion to compel arbitration, as augmented by

further discovery, a renewed motion contemplated by the court in denying CSMG's earlier motion.

The court has not yet decided whether any or all of Grillier's claims are subject to arbitration[1]. CSMG's instant motion for separate trials is not the appropriate vehicle for deciding the issue.

III.

For the reasons set forth above, defendants CSMG's motion for separate trials and an order limiting discovery until after the court has conducted a trial on the issue of arbitrability is hereby DENIED. The Court's November 24, 2008 Scheduling Order remains in force and effect. The court awaits further development consistent with the analysis herein and the court's prior guidance offered at the August 13, 2008 hearing and November 24, 2008 scheduling conference.

SO ORDERED.

Dated: January 12, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 12, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---

[1] Grillier's assertion that "[t]he issue of whether or not Grillier's claims are subject to arbitration has already been argued and decided by the Court" is, at best, inaccurate.

6