UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM J. GRILLIER,

        Plaintiff,

vs.

Case No. 08-CV-12449
HON. GEORGE CARAM STEEH

CSMG SPORTS, LTD. et al.,

        Defendants.

_____/

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO COMPEL ARBITRATION (# 28)

        Defendants CSMG Sports, Ltd., CSMG International, Ltd., CSMG, Inc. (collectively "CSMG"), and Henry Thomas move to compel arbitration of plaintiff Kim Grillier's claims of breach of an oral agreement, quantum meruit/unjust enrichment, and promissory estoppel. A hearing on the motion was held on June 15, 2009. For the reasons set forth below, defendants' motion to compel arbitration will be GRANTED IN PART, as to Grillier's claims for compensation relative to CSMG's signing of Marcus Taylor, Alan Anderson, Dwyane Wade, Devin Harris, and Chris Bosh. Defendants' motion for summary judgment as to the merits of Grillier's remaining claims premised on an oral contract will be DENIED, without prejudice. Grillier's request to stay arbitration pending adjudication of his remaining claims in this court will be DENIED.

I. Background

        Grillier allegedly began working for defendant Henry Thomas in 2001 as a sports agent, helping Thomas recruit young basketball players to sign agency contracts with

Thomas Sports Management ("TSM").  Thomas allegedly hired Grillier as a "consultant," paying Grillier $500.00 per month.  Grillier alleges that,"[f]rom the beginning," Thomas promised him that he would be rewarded with a percentage of the fees generated by the players Grillier recruited to TSM.  Defendant CSMG Sports, Ltd. allegedly purchased TSM in 2003, with Thomas becoming Vice President of Basketball Operations in Chicago.  Grillier allegedly opened a CSMG office in Detroit while continuing to be paid $500.00 per month.  Grillier alleges that "Thomas, on behalf of CSMG, promised Grillier he would receive a minimum of 20% of the fees for any current clients that Grillier had brought in, 15% of the fees for new clients, and 3% of the marketing fees for all clients." Complaint, ¶ 21, at 5-6.  Grillier allegedly recruited numerous players to CSMG, but was forced to leave CSMG after Thomas and CSMG did not fulfill their promises.  Count I alleges breach of an oral agreement.  Count II alleges quantum meruit/unjust enrichment.  Count III alleges promissory estoppel.

Grillier and CSMG Sports, Ltd. executed a "Consulting Agreement" on October 1, 2002, which reads in part:

> 3. **Compensation.**
>
> a. In exchange for performing the duties set forth herein, Company [CSMG Sports, Ltd.] shall pay Consultant [Grillier] $500.00 per month, payable on the last day of each month.
>
> b. If an athlete referred by Consultant signs a representation agreement with Company, then Company, at its sole discretion, shall pay Consultant up to ten percent of the fees actually collected by Company on the first two professional player contracts negotiated by Company for that athlete, regardless of the length of the professional player contract(s) signed by the athlete.  With respect to the third or subsequent player contract negotiated by Company for that athlete, fees paid to Consultant, if any, will be at the sole discretion of the Company.  Subject to the termination provisions set forth in Section 6 of this Agreement, any amounts that become due to Consultant shall be paid in the calender year following the year in which Company

> actually receives the fees from the referred client(s) . . . .
>
> 4. **Independent Contractor**.
>
> a. The parties intend and agree that Consultant, in performing his duties hereunder, shall be and shall act at all times as an independent contractor. . . . .
>
> c. Consultant is not, and shall not be considered, an agent or employee of Company. Consultant is not entitled to any employee benefits, including, but not limited to, health insurance, unemployment insurance, and pension plan. . . . .
>
> 10. **Miscellaneous**.
>
> \*   \*   \*
>
> b. <u>Written Agreement to Govern</u>. This Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof, and supercedes all prior discussions, negotiations, understandings or written agreements among the parties relating to the subject matter contained herein, and merges all prior and contemporaneous discussions among the parties.
>
> \*   \*   \*
>
> d. <u>Law to Govern</u>. The validity, construction and enforceability of this Agreement shall be governed in all respects by the laws of the State of Illinois without regard to its conflict of laws rules. <u>With the exception of an action by Company to enforce the restrictive covenants contained herein, any controversy or claims arising out of, or relating to, this Agreement, or the breach thereof, shall be settled by arbitration held in Cook County, Illinois</u>, and administered by a commercial arbitration service agreed to by the parties under the selected services commercial arbitration rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any dispute that may not be settled by arbitration may be brought in any court of competent jurisdiction in Cook County, Illinois. Costs associated with binding arbitration shall be shared evenly by Consultant and Company.

(emphasis added).

Grillier argued in response to an earlier motion to compel arbitration that the Consulting Agreement was no longer applicable because Grillier was hired as an employee

of CSMG Sports, Ltd. on October 1, 2005.  Grillier maintained that he was employed under a new oral contract consistent with Thomas' promises to fully compensate him, an oral contract that did not provide for arbitration.  CSMG did not dispute that Grillier became an employee as of October 3, 2005, but argued that the arbitration provision in the Consulting Agreement remained controlling.  CSMG, Inc. Chief Financial Officer Ginger Gordon attested in an affidavit that five of the ten athletes set forth in Grillier's complaint[1] signed contracts with CSMG Sports, Ltd. before Grillier became an employee on October 1, 2005.

The court denied CSMG's initial motion to compel arbitration, without prejudice, and ordered the parties to proceed with limited discovery reasonably related to the issue of arbitration.  August 15, 2008 Order.  CSMG thereafter filed a motion for separate trials on the issue of arbitration.  The court was informed at a November 24, 2008 conference that no discovery related to the issue of arbitration had taken place.  The court extended discovery cut-off to May 29, 2009, with the exception of pro athletes and coaches.  On January 12, 2009, the court denied CSMG's motion for separate trials.  Defendants filed the instant motion for summary judgment to compel arbitration on March 3, 2009.

It is undisputed that the parties executed the Consulting Agreement on October 1, 2002, and that Grillier's status with CSMG changed from independent contractor to employee on October 1, 2005.  Grillier left CSMG in late February 2007.  Grillier does not dispute Gordon's attestation that five of the athletes' named in the complaint were signed by CSMG before Grillier became an employee.  See fn. 1.  Defendants do not dispute that the remaining five athletes named in the compliant signed with CSMG after Grillier became

---

[1] Marcus Taylor (signed June 12, 2002), Alan Anderson (signed May 4, 2005), Dwyane Wade (signed May 12, 2003), Devin Harris (signed May 31, 2004), and Chris Bosh (signed June 3, 2003).

an employee.[2]

## II. Arbitration

Defendants initially argue pursuant to Rule 56 that Grillier cannot prove his claim that he was entitled to commissions under an oral agreement, and therefore Grillier's commission rate is governed by the Consulting Agreement and its arbitration clause. Defendants proffer e-mails exchanged between Grillier, Thomas, and former CSMG Chief Executive Officer ("CEO") Michael Hall to demonstrate that the parties negotiated, but never agreed to, Grillier's compensation demands. Defendants argue that, even assuming for purposes of this motion that there was an oral agreement, Grillier's claims remain subject to arbitration because they "arise under" and "relate to" the Consulting Agreement and the parties' ongoing relationship. Defendants maintain that Grillier cannot be permitted to circumvent arbitration by simply alleging that the parties reached a separate oral agreement during the time the Consulting Agreement was in effect.

Grillier counters that the new oral agreement to pay Grillier a minimum of 20% of the fees for any current clients Grillier brought in, 15% of the fees for new clients, and 3% of the marketing fees for all clients, applies regardless of when an athlete signed a contract with CSMG. Grillier maintains that the Consulting Agreement governed only while he was an independent contractor, and became of no force or effect once he became an employee. Grillier asserts that an "Employee Confidentiality and Non-Solicitation Agreement" he signed on October 3, 2005, after he became an employee, does not contain an arbitration clause, and addresses all of the issues set forth in the Consulting Agreement with the exception of compensation, demonstrating that the oral agreement supplanted the

---

[2] Ronnie Brewer, Quinton Ross, Joah Tucker, Andre Emmett, and Udonis Haslem.

Consulting Agreement and its arbitration clause.  Grillier also relies on a September 22, 2005 e-mail authored by former CSMG CEO Thomas Kang to support his position that CSMG itself intended "to end any remnants of issues related to his consultant status" after Grillier became an employee.  Grillier argues that he is seeking compensation under the oral employment agreement for all ten athletes, not for breach of the Consulting Agreement, and therefore there is nothing to arbitrate.  Grillier contends that if his oral contract claims are submitted to arbitration under the Consulting Agreement, he will be precluded from recovering on the claims by operation of the "Compensation" section of the Consulting Agreement.

Employment contracts, except those governing workers engaged in transportation, are governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 2.  DeOrnellas v. Aspen Square Mgt., Inc., 295 F.Supp.2d 753, 759 (E.D. Mich. 2003) (citing EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002)).  Under 9 U.S.C. § 4 of the FAA, a federal district court must "make a number of threshold determinations before compelling arbitration[.]" Fazio v. Lehman Brothers, Inc., 340 F.3d 386, 392 (6th Cir. 2003).

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Id. at 392 (quoting Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000)).

Under § 2 of the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract."  Great Earth Companies, Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002)

6

(quoting 9 U.S.C. § 2). "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration [, and] any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." Id. (quoting Stout, 228 F.3d at 714). Claims arising out of activities contemplated by agreements containing an arbitration provision are covered by the arbitration clause. Fazio, 340 F.3d at 395. Court must be cautious, however, against "forcing unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." Id. (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995)). Whether a party's claims are subject to arbitration is an issue of law for the court to decide. Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 576 (6th Cir. 2003).

"Under the FAA, a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims." Match-E-Be-Nash-She-Wish-Band of Pottawatomi Indians v. Kean-Argovitz Resorts, 383 F.3d 512, 514 (6th Cir. 2004) (quoting Burden v. Check Into Cash, 267 F.3d 483, 485 (6th Cir. 2001)). "Once a district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator." Id at 515 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967)).

A.

Under the express terms of the October 1, 2002 Consulting Agreement, the parties agreed to arbitrate "any controversy or claims arising out of, or relating to, this Agreement, or the breach thereof[.]" The Consulting Agreement provides the amount Grillier was to be

7

compensated if an athlete signed a representation agreement with CSMG:

> a. In exchange for performing the duties set forth herein, [CSMG] shall pay Grillier $500.00 per month, payable on the last day of each month.
>
> b. If an athlete referred by [Grillier] signs a representation agreement with [CSMG], then [CSMG], at its sole discretion, shall pay [Grillier] up to ten percent of the fees actually collected by [CSMG] on the first two professional player contracts negotiated by [CSMG] for that athlete, regardless of the length of the professional player contract(s) signed by the athlete. With respect to the third or subsequent player contract negotiated by [CSMG] for that athlete, fees paid to [Grillier], if any, will be at the sole discretion of the [CSMG].

The compensation represented in Section a. was often referred to as a "consulting fee," while the compensation referred to in Section b. was referred to as a "finder's fee." Defendants' Exhibit 6. While working as an independent contractor, Grillier received several increases in the fixed consulting fee, or "salary," from $6,000 a year in 2002 to $30,000.00 a year before he became an employee. Id. During his tenure as an independent contractor, Grillier remained eligible to collect a "finder's fee." Id. Just prior to Grillier becoming an employee effective October 1, 2005, CSMG CEO Kang wrote a September 22, 2005 e-mail to CSMG's Marty Pereira in response to Pereira's query about a "finder's fee earned by Kim":

> Subject: RE: Kim Grillier's finder's fee check
>
> Henry [Thomas] and Kim [Grillier] have decided that he want to become a full time employee, and I support their decision.
> As of October 1, he will become one.
> He compensation level will be the same and he will receive the standard employee benefits.
>
> The finder's fee is for Carlos Boozer whom Kim [Grillier] was instrumental is [sic] signing.
>
> There is no precedence for such a signing in the consulting agreement that we executed with him as there was already a second contract negotiated for Carlos and we received a retainer/service fee.

> As a full time employee, as he is no longer eligible for any finder's fees, past or future, we made the decision to compensate Kim [Grillier] for Carlos Boozer to end any issues related to his consultant status.

Plaintiff's Exhibit 3. According to an April 11, 2006 e-mail from Thomas to Grillier, Grillier's "salary" was increased to $32,000.00, and he received a "bonus" of $2,000.00. Plaintiff's Exhibit 14. It was also anticipated that Grillier's salary would be increased to $46,000.00. Id. CSMG presented Grillier with a proposed "Employment Agreement" on January 1, 2007 which provided for "Compensation" in the form of a $52,000.00 "salary" and participation in "bonus or other incentive plans" which CSMG "may establish." Defendants' Exhibit 11. The proposed Employment Agreement did not provide for payment of a "finder's fee," and did not contain an arbitration provision. Id. Grillier refused to sign the proposed Employment Agreement. Grillier's February 2007 resignation was accepted by CSMG on March 8, 2007. Plaintiff's Exhibit 4.

B.

The language of the Consulting Agreement contemplated "any controversy or claims arising out of, or relating to" claims for compensation earned by Grillier while he operated as an independent contractor. Great Earth Companies, 288 F.3d at 889; Fazio, 340 F.3d at 395. Grillier's claims for compensation, sounding in breach of an oral agreement, quantum meruit/unjust enrichment, and promissory estoppel, are not dispositive regarding the issue of arbitrability. Nestle Waters North America, Inc. v. Bollman, 505 F.3d 498, 503 (6th Cir. 2007). The arbitration clause broadly encompasses any claims "arising out of, or relating to" the Consulting Agreement, "*or* the breach" of the Consulting Agreement. The fact that Grillier does not allege breach of the Consulting Agreement does not place his claims outside of the scope of arbitration. Id. Grillier concedes that Marcus Taylor, Alan

9

Anderson, Dwyane Wade, Devin Harris, and Chris Bosh signed with CSMG while Grillier was an independent contractor and the Consulting Agreement was in effect.

Grillier's argument that he will be precluded from recovering under the oral agreement if his claims are sent to arbitration pursuant to the Consulting Agreement conflates the issues of arbitrability and liability. Pottawatomi Indians, 383 F.3d at 514. It is for the arbitrator to decide whether Grillier is entitled to be compensated under the alleged oral agreement or the terms of the Consulting Agreement with respect to CSMG's signing of Taylor, Anderson, Wade, Harris, or Bosh while Grillier acted as an independent contractor. Id.

Grillier's argument that the arbitration provision in the Consulting Agreement became of no force and effect once Grillier became a CSMG employee on October 1, 2005 is not well taken. The absence of a written or oral arbitration agreement with respect to Grillier's employment, after he worked as an independent contractor, at best raises only a doubt as to whether the arbitration clause in the Consulting Agreement continued to apply with respect to athletes signed by CSMG while Grillier was working as an independent contractor. Under the FAA, this doubt is resolved in favor of arbitration. Great Earth Companies, 288 F.3d at 889.

The cases relied upon by Grillier are distinguishable. Private One of New York, LLC. v. JMRL Sales & Service, Inc., 471 F.Supp.2d 216, 223 (E.D.N.Y. 2007) recognized under New York law that "a subsequent contract regarding the same subject matter supercedes the prior contract." Private One did not involve an agreement to arbitrate, much less an agreement to arbitrate governed by the FAA. As attested to by Grillier himself, "I entered into an oral agreement covering the financial terms of my employment. . . . *From that*

*point forward*, we were no longer operating under the Consulting Agreement, which ceased to apply once I became an employee." Plaintiff's Exhibit 4, Grillier July 10, 2008 Affidavit, ¶ 4, at 2 (emphasis added). Whitehouse v. Hoskins Mfg. Co., 113 Mich. App. 138, 317 N.W.2d 320 (1982) held under Michigan law that an arbitration agreement set forth in a collective bargaining agreement ("CBA") did not apply to a salaried worker who once had been a union member because, at the time of the challenged discharge, the worker was not a union member and was therefore not a party to the CBA. Id at 141-142. Whitehouse also did not involve an arbitration agreement governed by the FAA. Further, the Consulting Agreement was in effect at the time Taylor, Anderson, Wade, Harris, and Bosh signed with CSMG, and Grillier was a party to the Consulting Agreement at the time he earned the now challenged commission. Trinchitella v. D.R.F., 584 So.2d 35 (Fla. App. 1991) (ruling that second written agreement stating there were no "collateral agreements . . . in any way touching upon the subject matter of this instrument which are not expressly contained herein" superceded first agreement containing an arbitration agreement) and Thomas W. Ward & Assoc., Inc. v. Spinks, 574 So.2d 169 (Fla. App. 1991) (remanding for further factual development whether the parties intended to be bound by an arbitration agreement) likewise did not involve FAA arbitration agreements, and were decided under Florida law. The two cases are also distinguishable on their facts.

CSMG Kang's September 22, 2005 e-mail statements that "[a]s a full time employee, Grillier is no longer eligible for any finder's fees," and that CSMG "compensate[d] Kim [Grillier] for Carlos Boozer to end any issues related to his consultant status," do not convey an intent by CSMG to forego its right to arbitration for "any controversy or claims arising out of, or relating to" compensation earned by Grillier as an independent contractor. Grillier's

11

interpretation of the e-mail as evidence that CSMG no longer intended to arbitrate claims advanced by Grillier for work he performed while acting as an independent contractor is over-broad. Again, at best, the e-mail creates a doubt that must be resolved in favor of arbitration. Great Earth Companies, 288 F.3d at 889.

Grillier does not dispute that the arbitration clause applies to all of the CSMG defendants, as well as defendant Thomas. See Arnold v. Arnold Corporation-Printed Communications for Business, 920 F.2d 1269, 1282 (6th Cir. 1990) (recognizing that non-signatory defendants are bound to an arbitration agreement if their alleged wrongful acts relate to their capacities as agents of the signatory defendant). Defendants' motion to compel arbitration of Grillier's claims premised on CSMG contracts signed by Marcus Taylor, Alan Anderson, Dwyane Wade, Devin Harris, and Chris Bosh before Grillier became a CSMG employee on October 1, 2005 will be granted as a matter of law. Highlands Wellmont Health Network, 350 F.3d at 576; Great Earth Companies, 288 F.3d at 889; Fazio, 340 F.3d at 395.

C.

The language of the Consulting Agreement did not contemplate "any controversy or claims arising out of, or relating to" claims for compensation earned by Grillier if Grillier became an employee of CSMG. Great Earth Companies, 288 F.3d at 889; Fazio, 340 F.3d at 395. The Consulting Agreement expressly recognized that Grillier "in performing his duties hereunder, shall be and shall act at all times as an independent contractor," and "is not, and shall not be considered, an agent or employee of [CSMG]." CEO Kang's September 22, 2005 e-mail conveys the intent that, once Grillier became an employee, he was "no longer eligible for any finder's fees," fees otherwise available to Grillier as an

independent contractor. Grillier was not paid a "finder's fee" for any athletes that signed with CSMG after Grillier became a CSMG employee. It is undisputed that Grillier did not sign an arbitration agreement, nor orally agree to arbitration, after he became an employee on October 1, 2005. While the parties shared a continuing relationship from October 1, 2002 through March 8, 2007, that relationship materially changed on October 1, 2005 when Grillier became an employee. Defendants' argument that they are entitled to arbitrate claims for compensation for athletes signed after October 1, 2005 because Grillier cannot prove his allegation of a new oral contract also conflates the issues of arbitrability and liability. Pottawatomi Indians, 383 F.3d at 514. Grillier has not circumvented arbitration by simply alleging the existence of an oral agreement.

Grillier could reasonably believe that a judge would decide the issues of what compensation he was entitled to for athletes that signed with CSMG after Grillier became a CSMG employee. Fazio, 340 F.3d at 395. Defendants' motion to compel arbitration of Grillier's claims premised on CSMG contracts signed by Ronnie Brewer, Quinton Ross, Joah Tucker, Andre Emmett, and Udonis Haslem after Grillier became a CSMG employee on October 1, 2005 will be denied as a matter of law. Highlands Wellmont Health Network, 350 F.3d at 576; Fazio, 340 F.3d at 395.

### III. Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment on the merits of a claim "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). Defendants move

for summary judgment of Grillier's claim of an oral agreement governing compensation, relying on the e-mails exchanged among Grillier, Thomas, and former CSMG CEO Hall. Defendants argue it beyond dispute that Grillier cannot prove CSMG ever accepted Grillier's proposed contract terms, Anand v. Marple, 167 Ill. App.3d 918, 920 (Ill. Ct. App. 1988), that Grillier knew there was no oral agreement, and that Grillier knew Thomas lacked authority to bind CSMG in contract. Sacks v. Helene Curtis Industries, Inc., 320 Ill. App. 76 (1950).

Defendants' motion for summary judgment seeks dismissal of Grillier's claims in favor of arbitration. See March 3, 2009 Brief, at 17 (arguing "[t]he Consulting Agreement is the only agreement making Mr. Grillier eligible for bonuses for athletes he brought to CSMG. Accordingly, any claims Mr. Grillier has made for commissions arise under the Consulting Agreement and are subject to arbitration."); April 20, 2009 Reply Brief, at 3 (asserting "[t]he only agreement under which Grillier could possibly be entitled to a commission or bonus would be the Consulting Agreement, which contained an arbitration agreement. Summary judgment should be granted in favor of Defendants to dismiss the complaint and require Plaintiff Grillier to submit his claims to arbitration.). In determining whether to compel arbitration, this court cannot decide *the merits* of Grillier's claim that his compensation level was governed by an oral contract. Pottawatomi Indians, 383 F.3d at 514. Defendants' motion for summary judgment is procedurally flawed, and will be denied without prejudice. The court further notes that the parties have engaged in only limited discovery, and that the dispositive motion date is currently set for August 17, 2009.

### IV. Stay Arbitration

Grillier asks that the court stay arbitration of the claims involving Taylor, Anderson,

Wade, Harris, and Bosh until his claims related to Brewer, Ross, Tucker, Emmett, and Haslem are adjudicated in this court. Grillier argues that staying arbitration will contribute to judicial efficiency by eliminating a duplication of proofs and facilitating settlement of the arbitrable claims.

> 9 U.S.C. § 3 of the FAA provides:
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties <u>stay the trial of the action until such arbitration has been had</u> in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

(emphasis added). "When a complaint presents a combination of arbitrable and non-arbitrable claims, the Court has discretion *to stay the non-arbitrable issues* pending arbitration as a matter of discretionary control of the court's docket." <u>RMF Nooter, Inc. v. Gleeson Constuctors, LLC</u>, No. 1:06-CV-298, 2006 WL 3290126, at *7 (W.D. Mich. Nov. 13, 2006) (emphasis added).

The court is not persuaded that it should stay the claims pending before this court, much less the claims that will be pending in arbitration. Grillier's reliance on <u>Liskey v. Oppenheimer & Co., Inc.</u>, 717 F.2d 314 (6th Cir. 1983) is misplaced as the court is not required to resolve "the competing policies in the Arbitration Act and the Securities and Exchange Act of 1934." <u>Id</u>. at 320. <u>Yamasaki Korea Architects, Inc. v. Yamasaki Korea Associates, Inc.</u>, No. 08-10342, 2008 WL 4940590, at *5 (E.D. Mich. Nov. 17, 2008), also cited by Grillier, notes this court's authority to stay the *non-arbitrable* claims. Grillier's motion to stay arbitration will be denied.

<u>V. Conclusion</u>

    Defendants' motion to compel arbitration is hereby GRANTED IN PART, as to Grillier's claims for compensation relative to CSMG's signing of Marcus Taylor, Alan Anderson, Dwyane Wade, Devin Harris, and Chris Bosh. Grillier's claims of breach of an oral agreement, quantum meruit/unjust enrichment, and promissory estoppel premised on CSMG's signing of Taylor, Anderson, Wade, Harris, and Bosh ONLY are hereby DISMISSED, without prejudice, in deference to arbitration. Defendants' motion to compel arbitration is hereby DENIED IN PART as to Grillier's claims premised on CSMG's signing of Ronnie Brewer, Quinton Ross, Joah Tucker, Andre Emmett, and Udonis Haslem. Defendants' motion for summary judgment on the merits of Grillier's remaining claims is hereby DENIED, without prejudice. Grillier's request to stay arbitration pending adjudication of his remaining claims is hereby DENIED.

    SO ORDERED.

Dated: June 16, 2009

                                          s/George Caram Steeh
                                          GEORGE CARAM STEEH
                                          UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 16, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---